Next matter is U.S. vs. Chapman. Good morning. My name is Candace Kane and I represent Malachi Chapman. I ask to reserve three minutes in rebuttal. May it please the court, this case is unusual in that neither counsel nor Mr. Chapman knew that he was about to be sentenced that day. And that's why we're asking for a remand. The denial of a short request. You're not suggesting that it should go to a different judge? I would leave that to the next phase. But that should be considered of course. The denial of a short continuance that was requested here denied three rights. Allocution, rights was an offer of proof. I would have been able to bring in people, letters, I would have been able to express myself. One of the things that judges tell us is important at a very emotional, very thought provoking type of presentation that needs consideration. And he didn't really have that chance here. The other thing that he did not have was the guiding hand of counsel. Because counsel didn't know that he was about to be sentenced and they hadn't talked about expressions of remand. How did this happen? How did this all come about? In terms of counsel just showed up that day? Well according to the judge says on the record that counsel wrote the wrong date down. Right, he said miscalendered it. But he was there at the courthouse? I think he was called in quickly and drove to the courthouse. My colleague is here, the prosecutor is here, he maybe knows that detail. I didn't ask counsel that. But it sounds like the case was called in the morning and it really didn't start until noon and that was probably to allow counsel to arrive at the courthouse. This is a courthouse in Williamsport and I think that the driving distances are long. But in elocution here, as I said, he had mostly a proffer, unprepared, unguided statements. And one of the things that you get when you have notice is you have the chance to have an effective and personally persuasive presentation to the court. Rule 32 codified the ancient right of elocution but it did more. It explained the purposes of elocution. One is to allow the defendant to offer mitigation. Two is to present personal characteristics that then allow the court to craft an individualized sentence. That was written before the age of pre-sentence reports. Two was satisfied. He had a chance for the personal characteristics to be communicated. In fact, the judge went on to pronounce sentence because I had some length about the defendant's background and his personal characteristics. Right. The judge also said there, I know what I think I need to know about your case. But how could he? He did not know what he didn't know. And he didn't allow Mr. Chapman to bring in the supporters. This person has a big extended family. He grew up in Williamsport, went to high school in Williamsport. So he had teachers in the area. We don't know what he would have been able to bring to court that day if he had an extension. He did say I had letters. I had family support. I had things I wanted to tell the court. One thing the Commonwealth comments on, I mean the government comments on is that Mr. Chapman said he didn't know if what he had would persuade the court. So it must not have been worthwhile. That's the implication. But that's not it at all. Mr. Chapman was very polite and he was telling the court, you know, I don't know what your honor will decide but I want to present this to you. And that request was denied. What do you make of this statement by the trial court? I think he says it twice. He says the defendant's substantive rights, your substantive rights Mr. Chapman have not been affected by this oversight. Isn't that kind of putting the cart ahead of the horse? How can the court determine somebody's substantive rights haven't been affected when he doesn't know what if anything's going to be presented? Exactly. I agree completely. And we know from the Adams case in 2001 that if there's a violation of a right and the opportunity existed for that violation to influence the outcome, then we have to have a new hearing. And here we had an opportunity for a lower sentence. Mr. Chapman was facing 40 years. He was sentenced to 16 years. The guidelines started at 15. I think they went to 19. But the plea agreement allowed him to ask for less, ask for 144 months, which is 12 years. But there's nothing in the plea agreement that would prevent the judge from going even lower if he was persuaded. In all practicality, given the record that the judge gave you, it's not likely that he would have gone below 144, is it? We don't know. We know that the judge was holding Mr. Chapman to a standard that I think is unfair. And so we don't know what he would have done maybe on a different day, a better day. I don't know that here, but there are studies that show that can affect what happens in a sentence, whether it's before lunch or after lunch. Oh, yes, yes, that's right. What do you make of Mr. Chapman at one point saying he never reviewed the PSI? When you have a short break, and then he says, well, yeah, now I have reviewed it. The government may take the position that he did, in fact, have a chance to review the PSI. Right, I think that it was reviewed maybe quickly or maybe by phone or I don't really know. The suggestion was a phone call before the sentencing. He may have gone over it with his attorney. Right, and they may have talked about it on the phone. I don't think... No, no, I was told that Chapman thought he adequately went over the PSI. It sounds like he was concerned about not having a chance. Right. And then the lawyer gets a chance to briefly chat with him. No, I think that is a concern here. He says we just never went over anything, Your Honor. Chapman says that. That's right. Yes, I don't think he had a lot of time with counsel leading up to this, which is why I'm sure... And it's interesting, the counsel in this case, didn't counsel argue for a sentence that would have violated the plea agreement? That's right. And counsel didn't even know we were supposed to be there that day? That's right. He didn't know the sentence that was prohibited by the defense to ask for. But he didn't know that sentencing was to occur. And for all those reasons... He brought the whole package. I'm sorry? He brought the whole package. Yes, yes. But for all those reasons, we're asking for a remand. And if the court now is inclined to assign it to a different court, that would be our request as well. Thank you. Mr. Rochtaschel? All the years I've known you, is it Rochtaschel or Rochtaschel? Rochtaschel. Did I ever get it right in all these years? Don't answer that. I'll answer to anything these days, Your Honor. And may it please the court, George Brand is a defendant in the United States. Is he a defendant? What happened here? Well, I think I'm obligated to. You are obligated to. There's an incredible advocate sitting behind you who knows when to hold him and when to fold him. And that's certainly a good adage to live by. But in this case, under the applicable precedent, Judge Brand did not act arbitrarily in denying the... What precedent are you referring to? I'm referring to the Alfano case. And Alfano says that a defendant who apparently, at least makes the representation that he has family, that would come into court, doesn't have the right to have family come into court as part of a variable accusation? No, but it does prescribe the standard by which we judge a judge's abuse of discretion in denying a continuance request. And Alfano applied that standard to a sentencing issue. And on the question of arbitrariness, Judge Brand had... Was it allocation? I beg your pardon? Was it allocation, the sentencing issue? No, it dealt with swearing in a witness. But it stands for the proposition that there's not an unlimited right to allocation. There's not an unlimited right to present witnesses at a sentencing proceeding. In this case, Judge Brand had delayed the sentencing for an extended period of time. The defendant had an ample period of time to prepare for the sentencing. Is there any dispute that the defendant did not know that sentencing was that day? Well, obviously he knew enough, Judge Manaski, to prepare a letter that got filed with the court three days before the sentencing. They send letters in at any particular time, but is there any dispute that when he showed up, that his lawyer did not tell him that it was going to be sentencing that day, that the lawyer had miscalendered it? Did the lawyer have to be called, summoned to be there? He did have to be called. I think the district judge noted that there was some oversight in the way he misread the scheduling order for that date. What do you make of the district court, not once, but twice, saying your rights are not going to be violated, so we're going to go ahead and sentence you, not knowing what, if anything, would be presented? Is he clairvoyant? He's telling him, nothing you say or do is going to change my mind, is what he's saying. I don't read the record quite that way, Judge. He says there's nobody to know. He says at least twice. I think it does show that the judge was sensitive to the need to balance the defendant's substantive rights and the potential for prejudice with the request for the continuance and the need to move the sentencing forward. I actually think it shows some sensitivity and the need to balance those rights, rather than a judge that was cavalierly saying, I'm just going to ignore your rights and go forward with the sentencing today. How can you be more cavalier than saying, it's my intention to proceed, your substantive rights aren't going to be violated? Not knowing what, if anything, would be presented. I think he also said that he wasn't going to proceed, or he would not have proceeded, if he believed that the defendant's substantive rights were going to be violated. That's before any argument is made as to, look, I have X, Y, and Z to present to you. He's saying this in a vacuum, not knowing what, if anything, is going to be presented. Isn't that putting the cart ahead of the horse? This defendant did not say, this is X, Y, and Z, or provide any kind of detail concerning what these additional witnesses... He said he would be here. He said that. He did, but he also described in detail his family background in his letter, and in his allocution. He described his background as someone who was the son of two drug addicts, who had a deprived background. I'm sorry, as you know, I sentenced, when I was in town, hundreds of defendants, maybe saying this this morning, maybe even close to going into thousands. I cannot concede the possibility of sentencing a defendant without hearing from the family. When the defendant says, my family wants to be here, and it's going to cost me a week's continuance, I cannot comprehend receiving that sentencing, not hearing from the defendants. No matter how notorious the guy's record is. His record is horrendous. He's a criminal offender. I imagine I'd be able to see that. If I sentenced, especially at this kind of time, a defendant, and I knew that his father, who maybe could be incredibly informative, because his father has walked down the same side of this house, who I've heard of in his family, would be there, and I'm taking 16 years of this guy's life, and I haven't heard from this guy's family? But that boggles my mind. Did any judge ever do that? In the Alfano case, actually, this court indicated that there was nothing in the record of the show that any of the people the defendant indicated were going to appear and speak. That wasn't a sentencing issue. That was not a sentencing issue in the protofile we're on now, when the defendant said, my family wants to be here before you sentence me. Totally different. That was witnesses. It wasn't going to the right allocation, and it wasn't a one week, seven days, five working days continuance. That's all I'm asking for. Give me five days, judge, to get my function here. I don't know if that helped me, but they supported me, and maybe it will, but I want you to know what I have to say. The other thing that concerns me is his rather cavalier attitude with respect to the PSI. So the chaplain on two occasions says, I didn't have a chance to review with my attorney. Twice he says that. So the judge takes what looks like a very brief recess, and we all know how long and complicated a PSI is, particularly in a case where the guy's a career offender, and they go back on the record, and he doesn't even ask whether he understood the PSI. He says, your honor, we had a brief discussion by telephone, nothing in person, but we had a brief discussion by telephone. Then the court goes into his business about, there are just two objections, but never asks him, do you understand the pre-sentence report? I mean, there's no conversation about that. I think the judge did question the defendant about whether he had reviewed the pre-sentence report. I think that's why we have counsel to represent defendants and look at pre-sentence reports and help them to understand some of the finer points of them. He says, I don't know what objections you're stating. This is the defendant. I don't know what objections you're stating. We had a brief discussion by the phone, nothing in person. And he's asked by the judge, do you have an opportunity to review the PSI? No, your honor. Are you kidding me? I'm not kidding you. At some point, though, he was given an opportunity to consult with counsel. The district court asked him after that opportunity to consult with counsel if he had, in fact, reviewed it with counsel. Never asked if he understood it? I grant you that the record doesn't precisely say this. It says nothing about it. There's no, he was not asked if he understood it. That's absolutely correct. At the end of section C, where Judge Greenberg discussed the use of discretion for non-requested continuance, he said, even if the sentencing judge did not arbitrarily, there is nothing in the record. So he was assuming out of wonder that there was a denial of visa discretion. Nothing in the record showed that any person had actually agreed to submit a letter on Fano's behalf. Very, very different. Where there's no reason that these letters are written would have helped to find a sentence. And you see no visa discretion denying the continuance request. So what we're saying is, there's nothing in the record that suggests that the person would have agreed to write the letter, even if the continuance was requested and granted. We don't have that here either. He said that. But to this day, we don't have any copy of the letter he said they were going to submit. The district court doesn't have jurisdiction to hear the letter now, to read the letter now. We have the case. I'm not talking about the letter, I'm talking about a family member coming into court where the defendant said, and it may or may not be true, that the family wanted to be here, that somebody would have been there. He said, I know some of us have imposed sentences. I cannot tell you what it's like to impose a sentence on somebody and there's no family member there. My first homicide sentencing, I can't remember what it was, but it was a whole lot of years. And from the time the trial began to the time the sentence was pronounced, there was no family member there. The only person who supported that kid and was a kid was his attorney. To this day, it impacts me that this kid had 40 years of his life in public and more taken away, and no one ever stood by that kid's side. It can make a difference. It doesn't necessarily make a difference, as Chapman admitted, but to a lot of judges, it can make a difference. He deserved the right to arson down to 144 months. That's still a lot of time. The sentencing judge said, here, that doesn't kind of blow my mind. This is the only sentence that will serve my purposes of imposing sentence. Which talks a lot of vocabulary. How can it be the only sentence? So he has 16 years. That's saying that 15 years and a half wouldn't serve the purpose of the sentence. 15 years wouldn't meet the purpose of the sentence. 12 years wouldn't do it. That's kind of a ridiculous statement. There's only more than one sentence when it comes to incarceration, in terms of incarceration, that will meet the objectives of the sentence. But the judge seems to think that he's set upon the one perfect sentence. He knows what he has to do to impose the sentence. If he imposes the perfect sentence, let's move on to the next case. Judge McKee, would you like me to comment on that? If you want to, sure. Well, I would say this on behalf of the district court's statement that it was the only sentence. It was prefaced by a recitation of the fact that he had reviewed the pre-sentence report. He identified salient facts from the report and identified his review of the Section 3553A factors. And I believe, read in that context, the district court was stating that his review resulted in that being the appropriate sentence under the review of all the circumstances in the case. So what do you make of his allocution? He says, but, like, I don't know about this. I'm just kind of caught off guard right now. I know I'm rambling. I'm caught off guard, really, Your Honor. So he really had no idea. He was about to get a 16-year sentence. That's what the defendant consistently said that from the moment the sentence started. But the district court obviously believed that the defendant had reviewed more of the record and more of the pre-sentence report than he let on. He said he didn't. He said he didn't review the pre-sentence report. Twice he says that. But that is what he said. What the court said before is, the sentence I'm about to impose is the only one sufficient to satisfy Section 3553A factors outlined above. He didn't even outline all the 3553A factors above. He outlined all the 3553A factors that go to the characters of the offender and the offense. But he didn't go to the other things set forth in there. He says it's the lowest sentence, insisting that his objectives that will meet the objectives of 3553A, including the willability and needs of the defendant. But there's nothing to suggest that he really considered it because the entire thing is taken up with his recitation of the defendant's horrendous record. And it is a horrendous record. It started in front of me, I think it was 12 or 15 when he first got in trouble. It's a horrible record. How old was he at the time of sentencing, do you know? I believe he was 29, Your Honor. You know what else I found interesting? This is really not of the moment, but when the judge goes on this discussion to satisfy, when he moves on the objections, he cites a series, literally a series of NPOs, non-precedential opinions. Do you find that unusual? Not necessarily. Okay. So that's pretty typical there? Well, I don't know. They cite non-precedential opinions to support their legal conditions? I believe it was the district court endorsing perhaps the reasoning of those non-precedential opinions as opposed to relying on them as actual authority issued by this court. If there are no other questions, Your Honor, I see my time is rapidly growing short. Thank you. You get the same 16 seconds per minute that she does. She's not growing this short that rapidly. Thank you, Your Honor. If the court has no other questions, I will... Weiss, move. I will skip rebuttal. Thank you. Thank you. We'll take the matter in Weiss' name. We thank counsel for their argument.